UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERARDO GARCIA SANTANA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>M. MCCOY, et al.<br><br>　　　　Defendants. | Case No.: 1:17-cv-00941-AWI-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF ACTION FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 12)<br><br>**FOURTEEN-DAY DEADLINE** |

Plaintiff Gerardo Garcia Santana ("Plaintiff") is a state prisoner of the California Department of Corrections and Rehabilitation ("CDCR"), proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. On February 20, 2018, the Court screened Plaintiff's complaint and granted him leave to amend. (ECF No. 8.) Plaintiff's first amended complaint, filed on March 29, 2018, is currently before the Court for screening. (ECF No. 12.)

**I.　　Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## I. Plaintiff's Allegations

Plaintiff is currently housed Calipatria State Prison in Calipatria, California. The events in the complaint are alleged to have occurred while Plaintiff was housed at the California Substance Abuse and Treatment Facility in Corcoran, California. Plaintiff names the following defendants: (1) M. McCoy, R.N.; (2) R. Davidson, L.V.N.; (3) Julian Metts, Facility Doctor; and (4) David G. Smith, Orthopedic Doctor.

Plaintiff alleges as follows: On December 4, 2015, Plaintiff was in the recreation yard playing flag football. He stumbled on a pothole and fell onto another inmate, hitting his right hand and fingers on the inmate's foot/shoe. Plaintiff immediately felt a sharp pain in his right hand on his middle, fourth and pinky fingers. When Plaintiff saw how crooked and abnormal his finger looked, along with the sharp pain, Plaintiff walked off the field and went directly to the facility medical clinic as a medical emergency.

At the C-Facility clinic, Plaintiff expressed to an unidentified correctional officer his emergency, including the pain, possibility of a broken finger and need for immediate medical attention. The correctional officer told him to wait outside the clinic until he was called.

2

Approximately 10 minutes later, Plaintiff was let inside the clinic at met by two facility nurses, Defendant McCoy and Defendant Davidson. Plaintiff expressed to the defendants that he was in severe pain and was in shock at how his finger looked. When Defendants McCoy and Davidson examined Plaintiff's hand, Plaintiff asked if his finger was broken or dislocated. Defendant McCoy said it was more likely dislocated. Plaintiff then asked if the doctor was still in so he could put it back in place. Defendant McCoy said the doctor had already gone home. Plaintiff then asked Defendants McCoy and Davidson if they could send him to Central Treatment Center so that he could see a doctor and get x-rays. Defendant McCoy refused, stating that all doctors had gone home due to shift change. Plaintiff alleges that CTC has a 24-hour on-call doctor for emergencies.

Defendant Davidson began to write a medical report of the injury and then splinted and wrapped Plaintiff's injured finger. While his finger was being wrapped, Plaintiff expressed the pain he was suffering and how sensitive his injured figure was to Defendant's touch. Plaintiff asked if he could receive any pain relief medication. Defendant McCoy gave Plaintiff ten (10) Ibuprofen 200 mg pills and told him if his hand was still swollen in the next few days he should submit a sick call slip. Defendant McCoy then sent Plaintiff back to his cell.

Plaintiff alleges that in the following days he was in severe pain, which began to affect his everyday functioning. The affected area was bruised, swollen and painful to touch, and limited the use of his right hand. After several days, the pain and swelling had not subsided. Plaintiff then submitted a sick call slip on December 8, 2015, four days after the injury.

On December 10, 2015, Plaintiff was called to the medical clinic. Plaintiff was examined by Defendant McCoy. While filling out the Musculoskeletal Complaint form, Defendant McCoy asked Plaintiff his pain level, with 10 being the highest. When Plaintiff said 10, Defendant McCoy responded sarcastically, saying "Oh . . . you've had child bearing before?" (ECF No. 12 at p. 5.) Plaintiff responded that he had never had child bearing before and had never experienced this severe pain. Plaintiff also explained that because of the pain, his hand was immobilized and he was unable to sleep.

Plaintiff was then examined by Defendant Dr. Metts. Plaintiff told Defendant Dr. Metts that his finger had been in that condition since December 4. After Defendant Dr. Metts examined the right

3

1 hand/finger, he told Plaintiff that the fourth finger on the right hand was probably dislocated. Plaintiff
2 requested pain medication. Defendant Dr. Metts ordered Naproxen for pain and x-rays for Plaintiff's
3 right fourth finger.

4 On December 11, 2015, Plaintiff was called to the medical facility clinic. Plaintiff was again
5 seen by Defendant Dr. Metts. After examining Plaintiff's x-rays, Defendant Dr. Metts determined that
6 Plaintiff's fourth finger was not broken, but was dislocated. Defendant Dr. Metts then decided to put
7 the dislocated finger back in place. Defendant Dr. Metts injected Lidocaine to numb the finger. A
8 minute later, Defendant Dr. Metts began to manipulate the dislocated finder back in its place. As
9 Defendant Dr. Metts began to put the finger back in place, Plaintiff became lightheaded and nauseated.
10 After attempting to put the finger back in place, Defendant Dr. Metts wrapped the finger and sent
11 Plaintiff for another set of x-rays. Defendant Dr. Metts again prescribed Naproxen for pain.

12 On December 17, 2015, Plaintiff was seen by Defendant Dr. Metts, who reviewed the x-rays
13 from December 11, 2015. Defendant Dr. Metts determined that the fourth finger was still dislocated.
14 Defendant Dr. Metts again attempted to put the finger back in its place. When the procedure was
15 completed, Defendant Dr. Metts placed a splint under the fourth finger, wrapped it and sent Plaintiff
16 for another set of x-rays. The same date, Plaintiff returned to the clinic to see Defendant Dr. Metts.
17 After examining the x-rays, Defendant Dr. Metts concluded that the finger was still dislocated and
18 ordered orthopedic to see Plaintiff as soon as possible.

19 On December 18, 2015, Plaintiff was seen by Defendant Dr. Smith, an orthopedist, at the
20 Central Treatment Center. Defendant Dr. Smith examined Plaintiff's finger and opined that had his
21 finger been treated immediately on the day of injury, then he would not have been going through this
22 process. Defendant Dr. Smith numbed Plaintiff's finger and attempted to relocate it. Following the
23 procedure, Defendant Dr. Smith sent the Plaintiff for x-rays. After Defendant Dr. Smith examined the
24 x-rays, he told Plaintiff that the finger was still dislocated and that surgery was necessary. Defendant
25 Dr. Smith told Plaintiff that he would do the surgery and put in a pin to hold the joint of the finger in
26 place. Defendant Dr. Smith cast Plaintiff's hand and finger and sent him back to his cell. Plaintiff
27 requested pain relief medication, but Defendant Dr. Smith refused.
28

After suffering from pain and swelling for several days, Plaintiff submitted a sick call slip on December 19, 2015. On December 22, 2015, Plaintiff was seen by Nurse Practitioner L. Merritt. After listening to Plaintiff's complaints, Nurse Merritt ordered Tylenol 3, three times a day for pain and sleep. After examining Plaintiff's hand, Nurse Meritt became concerned and sent Plaintiff to the Central Treatment Center to see a doctor.

At the treatment center, Dr. H. Chang examined Plaintiff and said nothing was wrong. Dr. Chang also said he was going to change the prescribed Tylenol 3 because the medicine had opiates, exposing Plaintiff to selling the pills in the facility and making him vulnerable to drug abuse. Although Plaintiff pleaded with Dr. Chang, he was prescribed Tylenol 3, 1 pill three times a day.

On December 26, 2015, Plaintiff stopped at the medical clinic for his pain medication. The clinic was dark, but Plaintiff could see Defendant Davidson asleep with her head on her arms resting on the table. Plaintiff knocked several times on the clinic window, but Defendant Davison did not respond. Plaintiff left suffering from pain in his finger.

On December 29, 2015, Plaintiff underwent surgery. Defendant Dr. Smith placed a pin in the finger to hold the joint in place. More than one month later, Defendant Dr. Smith removed the pin and recommended physical therapy. However, physical therapy was postponed because Plaintiff had an infection in his finger following removal of the pin. Plaintiff attended physical therapy in February, March, April, May and June 2016. During Plaintiff's last visit with Defendant Dr. Smith, he told Plaintiff that he could not do anything about his finger and could offer no surgery to return full flexibility of his finger.

Defendant Dr. Metts concluded that the finger was now normal. Plaintiff alleges that as of November 3, 2016, his finger is permanently diminished with limited flexibility, stiffness and sporadic moments of pain. Plaintiff claims that defendants violated his Eighth Amendment rights and were deliberately indifferent to his serious medical needs. He seeks declaratory relief, along with compensatory and punitive damages.

**II.   Discussion**

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of

"deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cty. Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. *Jett*, 439 F.3d at 1096.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–106). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose

this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted).

As currently pled, Plaintiff's allegations do not state a cognizable Eighth Amendment claim against any of the named defendants in this action.

### Defendants McCoy and Davidson

Plaintiff's allegations indicate that Defendants McCoy and Davidson examined Plaintiff on the date of the injury, provided a splint and prescribed him pain medication. Defendants McCoy and Davidson also directed Plaintiff to submit a sick call slip if his hand was still swollen. Although Plaintiff suggests that these defendants were deliberately indifferent to his injury by failing to respond or otherwise delaying treatment, he has not stated a cognizable claim against them. At best, Plaintiff suggests a disagreement about the appropriate course of treatment on the day of his injury, which does not amount to deliberate indifference. To the extent Plaintiff complains that Defendant Davidson did not respond to him at the clinic window on one occasion, there is no indication that Defendant Davidson knew Plaintiff was there or that he had a medical need. Plaintiff has been unable to cure these deficiencies by amendment.

### Dr. Julian Metts

Plaintiff's allegations indicate that Defendant Metts provided treatment to Plaintiff at least four times between December 10 and December 17, 2015, and this treatment included multiple sets of x-rays, pain medication and multiple attempts to correct the dislocation of Plaintiff's finger. After these attempts were unsuccessful, Defendant Metts referred Plaintiff for consultation with an orthopedist. There is no indication that Defendant Metts delayed in providing treatment or pain medication. Neither Plaintiff's disagreement with the course of treatment nor any alleged negligence by Defendant Metts is sufficient to state a cognizable Eighth Amendment claim.

### Dr. David G. Smith

Plaintiff's allegations indicate that Defendant Smith evaluated Plaintiff, ordered x-rays, cast his hand and finger, performed surgery and ordered physical therapy. There is no suggestion in these allegations that Defendant Smith was deliberately indifferent to Plaintiff's serious medical needs. Plaintiff's assertions of pain during treatment are not sufficient to state a cognizable deliberate

indifference claim. Although Plaintiff alleges that Defendant Dr. Smith did not respond to his request for pain medication, there is no indication that Plaintiff was not already receiving medication that had been prescribed previously by Dr. Metts.

### III. Conclusion and Recommendation

Plaintiff's complaint fails to state a cognizable claim for relief. Despite be provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the deficiencies of his complaint, and further leave to amend is no warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Court HEREBY RECOMMENDS that Plaintiff's complaint be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915A and 1915(e).

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 9, 2018**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE